IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANDREA Y.,[1]                                          No.  6:22-cv-01956-HZ

                        Plaintiff,                     OPINION & ORDER

            v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                        Defendant.


Katherine L. Eitenmiller
Katie Taylor
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, OR 97401

            Attorneys for Plaintiff

Natalie K. Wight
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Portland, OR 97204

Jennifer C. Forsyth
Social Security Administration
Office of the General Counsel
6401 Security Boulevard
Baltimore, MD 21235

      Attorneys for Defendant

HERNÁNDEZ, District Judge:

      Plaintiff Andrea Y. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for DIB and SSI on January 10, 2018, alleging an onset date of September 26, 2016, and later amending that date to November 30, 2017. Tr. 197-211, 184.[2] Plaintiff's date last insured ("DLI") is December 31, 2022. Tr. 23. Her application was denied initially and on reconsideration. Tr. 21.

      On December 2, 2021, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 43. On December 21, 2021, the ALJ found Plaintiff not disabled. Tr. 31.  The Appeals Council denied review. Tr. 1.

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

## FACTUAL BACKGROUND

Plaintiff alleges disability based on major depression, bipolar disorder, GERD, and migraine. Tr. 244. At the time of her alleged onset date, she was 31 years old. Tr. 30. She has at least a high school education and past relevant work experience as a salesclerk and a fast-food worker. Tr. 30.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141;

20 C.F.R. §§ 404.1520(d), 416.920(c). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e) – (f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 23.[3] Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "posttraumatic stress disorder; major depressive disorder, recurrent, severe; and panic disorder." Tr. 24. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 24. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> Understand, remember, carry out, and persist at simple, routine, repetitive tasks, make simple work-related decisions, and perform work with few, if any, changes in the workplace, with no assembly-line paced work. In addition, [Plaintiff] has

---

[3] The ALJ noted Plaintiff's change of alleged onset date from September 26, 2016, to November 30, 2017, but referred to the original date throughout her opinion. The Court considers the relevant disability period from November 30, 2017, through December 21, 2021.

the capacity for no more than occasional interaction with coworkers and no public contact.

Tr. 26. Because of these limitations, the ALJ concluded that Plaintiff could not perform her past relevant work. Tr. 30. But at step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as laundry worker, auto detailer, and industrial cleaner. Tr. 31. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 31.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff argues the ALJ erred by: (1) rejecting Plaintiff's subjective symptom testimony; (2) finding the medical opinion of Pamela Roman, PhD, unpersuasive; (3) failing to base her opinion on substantial evidence; and (4) rejecting competent lay testimony. Pl. Br. at 4.

**I.    Subjective Symptom Testimony**

Plaintiff first argues the ALJ erred in rejecting her subjective symptom testimony. Pl. Br. at 5. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). The ALJ engages in a two-step analysis for subjective symptom evaluation. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (superseded on other grounds). First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (internal quotations omitted). Second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Id.* (internal quotations omitted).

When evaluating subjective symptom testimony, "[g]eneral findings are insufficient." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "An ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her residual functional capacity determination." *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015). Instead, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001); *see also Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (The reasons

proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discount the claimant's testimony.").

Plaintiff last worked in 2018 as a part-time salesclerk. Tr. 265, 49. She testified she stopped working because she was "having a lot of panic attacks" and "crying in front of customers." Tr. 49. Her panic attacks began "within the first six months of working there" and would occur "four to five times a month." Tr. 53–54. During panic attacks at work, Plaintiff would go into the break room and "cry on the couch and roll up into a ball." Tr. 54. She testified that her symptoms resulted in her leaving work early "about three or four times a month." Tr. 54. Plaintiff explained that her panic attacks can last up to six hours, but that feelings of panic and anxiety "don't really go away." Tr. 54. When she has a panic attack, "[i]t's hard to breathe" and "hard to think." Tr. 55. She stated, "[u]sually I just start crying and I, I roll up into a ball, and like I have a hard time talking to people." Tr. 55. In addition to panic attacks, her severe depression includes symptoms such as "problems focusing or hyper focusing on one thing and not, not even paying attention to the stuff that's going around me." She testified that when she stopped working, she was "talking about committing suicide." Tr. 53. Plaintiff testified that she rarely drives because she has been in multiple car accidents and feels like she is a "driving target." Tr. 48. Given her history of panic attacks and depression, Plaintiff testified her symptoms would cause her to miss work or be absent. Tr. 55.

The ALJ concluded that although Plaintiff's medically determinable impairments could "reasonably be expected to cause the alleged symptoms . . . statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 26–27.  To support this conclusion, the ALJ relied on (1) Plaintiff's activities of daily living; and (2) Plaintiff's medical evidence. Tr. 27–29.

### A.  Activities of Daily Living

Contradiction with a Plaintiff's activities of daily living is a clear and convincing reason for rejecting a Plaintiff's symptom testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). There are two grounds for using daily activities to form the basis of an adverse credibility determination: (1) when activities meet the threshold for transferable work skills and (2) when activities contradict a claimant's other testimony. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). However, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998), and "the mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping . . . does not in any way detract from his credibility," *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005) (citing *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)). In order to impact a claimant's credibility, the activity has to be "inconsistent with claimant's claimed limitations." *Reddick*, 157 F.3d at 722. The ALJ cannot mischaracterize statements and documents in the record or take these out of context in order to reach his conclusion on the claimant's credibility. *Id.* at 722–23.

The ALJ concluded Plaintiff's activities of daily living were inconsistent with her symptom testimony. To support this conclusion, the ALJ stated that Plaintiff "has been able to engage in – and succeed at – stressful situations, including buying a house, moving, and caring for a newborn child." Tr. 29.  Additionally, the ALJ noted that "[a]ccording to her reports to the consultative examiner, the [Plaintiff] is able to carry out all necessary household chores, she can drive and does drive despite being nervous about it, and she is independent in using a computer and a phone." Tr. 29.

The ALJ's findings are not supported by substantial evidence. First, the record lacks specific details as to Plaintiff's involvement in the processes of buying a home and moving. The ALJ cannot rely on activities that lack specific details to demonstrate a conflict between those activities and Plaintiff's reported limitations. *See Trevizo v. Berryhill*, 871 F.3d 664, 676 (9th Cir. 2017) (the ALJ erred in relying on activity testimony that did not include specific details as to the Plaintiff's involvement in those activities). The ALJ does not develop a record as to whether Plaintiff met with realtors, helped fill out loan paperwork, provided credit documentation, engaged in financing conversations, signed for a home loan, or participated in any other meaningful way in the purchase of a home. Nor did the ALJ develop a record of Plaintiff's involvement in moving. Tr. 47–52. Absent specific details, the ALJ cannot rely on these activities to discount Plaintiff's symptom testimony.

The ALJ's reliance on Plaintiff caring for a newborn as evidence that her symptoms are not as limiting as alleged fails for the same reason. The record contains no details as to what degree Plaintiff was responsible for caring for the newborn. *See* Tr. 978, 552, 809, 1029, 1142, 1152, 1275. Moreover, this Court has consistently held that a Plaintiff's ability to care for her children, without more, does not constitute an adequately specific contradiction with her reported symptom limitations. *See Trevizo*, 871 F.3d at 682 (the mere fact that [Plaintiff] cares for small children does not constitute an adequately specific conflict with her reported limitations). Again, the ALJ failed to develop a record of specific details and therefore cannot rely on these activities to discount Plaintiff's symptoms.

Second, the ALJ's statement that Plaintiff can "carry out all necessary household chores" is not clear and convincing evidence to reject Plaintiff's symptom testimony. Tr. 29. The ALJ does not explain how Plaintiff's ability to carry out household chores translates to transferable

work skills. *See Garrison*, 759 F.3d at 1016 ("Many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be possible to periodically rest or take medication.") (quoting *Fair*, 885 F.2d at 603). Additionally, the ALJ misquotes the consultative examiner's record, which actually states "[Plaintiff] is able to do her own laundry and when she had a home she *knew how to do all household chores*." Tr. 837 (emphasis added). Knowing how to do household chores is not that same as being able to carry out all necessary chores. Nor does knowing how to do household chores discount Plaintiff's testimony of panic attacks, depression, and anxiety.

Third, the ALJ's reliance on Plaintiff's ability to occasionally drive "despite being nervous" is not substantial evidence. Tr. 29. The record shows that Plaintiff's longstanding fear of driving is far greater than mere nervousness. *See* Tr. 398, 549. 653, 656, 1173. Plaintiff describes that she is scared to drive because she believes that "cars will try to hit [her] or drivers are not paying attention." Tr. 292. Indeed, her fear of driving is described as a trigger for her panic disorder. Tr. 1106. Moreover, her fear of driving has been documented throughout years of medical and counseling records. *E.g.*, 398, 549, 640, 646, 647, 687, 653, 656, 824, 1099, 1173. That she occasionally drives is not substantial evidence to discredit her symptom testimony.

Finally, the ALJ points out that Plaintiff is independent in using a computer and phone but fails to explain how these activities contradict Plaintiff's symptom testimony. In fact, the record shows Plaintiff is often supported by others she trusts when making phone calls or completing tasks involving the computer. *E.g.*, Tr. 63–73, 1179, 1189, 1263, 1227,1198, 1208, 1204. Again, the ALJ's conclusions are not supported by substantial evidence. As such, the ALJ erred in discounting Plaintiff's symptom testimony based on her activities of daily living.

### B. Medical Evidence

ALJs must consider objective evidence in considering a claimant's symptom allegations. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). Inconsistency between a claimant's testimony and the objective medical record is a valid reason to discount their testimony. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation conflicted with the medical record). And in some cases, the ALJ can discount claimant testimony when that testimony is not supported by the objective medical record. *See Batson v. Comm'r, Soc. Sec. Admin.*, 359 F.3d at 1196 (9th Cir. 2007) ("'Graphic and expansive' pain symptoms could not be explained on a physical basis" by claimant's physician); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (The ALJ could consider mild findings on MRIs and X-rays in discounting the plaintiff's testimony as to her back pain.). But "the Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence." *Reddick*, 157 F.3d at 722.

The ALJ discounted Plaintiff's symptom testimony because "objective findings on examination are often mostly normal." Tr. 29. The ALJ points to physical exams showing Plaintiff as having normal affect; appropriate behavior; linear and organized thought process; adequate insight and judgment; oriented to person/place; no gross deficit in cognition, intact narrative reconstruction and information processing; logical thought process, thought content within normal limits; cognition within normal limits; and insight and judgment within normal limits. *E.g.*, Tr. 811, 858, 954, 995, 1103, 1116, 1126, 1132–33, 1137.  However, when taken as a whole, Plaintiff having some normal findings in a clinical setting does not contradict her

reported symptoms of panic attacks and severe depression. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (treatment notes showing Plaintiff had good eye contact, organized and logical thought content, and focused attention did not undermine Plaintiff's testimony of symptoms of depression and social anxiety). Additionally, Plaintiff's records are replete with abnormal clinical observations. *See, e.g.*, Tr. 1185, 342, 350, 412, 427, 437, 542, 811, 821, 879, 1001–02, 1086, 1220.

The ALJ further noted "[Plaintiff] demonstrate[es] few difficulties interacting with authority figures." Tr. 29. However, the basis for this assertion are clinical reports taken in the context of medical or therapeutic settings, with trusted medical and counseling providers. Plaintiff's interactions with authority figures outside of these settings is far less cut and dry. For example, counseling notes from 2015 show that perceived negative encounters with a supervisor resulted in panic attacks. Tr. 364. Plaintiff described having a panic attack after a "talking to" with a staff member at the battered person's shelter she was staying at. Tr. 1212. Plaintiff moved to a different battered person's shelter after staff allegedly "violated her sense of integrity" and stated she "[g]ets angry which is why she left the last shelter." Tr. 1099, 836.

The ALJ discounted Plaintiff's symptom testimony because she "has been counseled to stop marijuana use as it worsens her symptoms." Tr. 29. "A [Plaintiff's] subjective symptom testimony may be undermined by an unexplained, or inadequately explained, failure to ... follow a prescribed course of treatment." *Trevizo*, 871 F.3d at 679; 20 C.F.R. §§ 404.1530, 416.930. Failure to articulate a reason for not following treatment "can cast doubt on the sincerity of the claimant's [symptom] testimony." *Id.* However, before basing a denial of benefits on a failure to follow treatment, the ALJ must conduct an inquiry into the circumstances of the non-compliance and whether the treatment prescribed could restore a Plaintiff's ability to work. *See Byrnes v.*

*Shalala*, 60 F.3d 639, 641 (9th Cir. 1995) ("[E]ssential to a denial of benefits pursuant to section 404.1530 is a finding that if the claimant followed her prescribed treatment she could return to work") (quoting *Rousey v. Heckler*, 771 F.2d 1065, 1069 (7th Cir. 1985)). Plaintiff testified that she smokes marijuana twice a day. Tr. 51. In September 2018, her primary care physician strongly advised that she stop smoking marijuana because it "may be making her depression worse." Tr. 487. The ALJ relied on Plaintiff's continued marijuana use, despite her doctor's advice to stop, as evidence that Plaintiff's symptoms were not as severe as alleged. The ALJ erred in doing so. First, although the ALJ stated that "marijuana worsens [Plaintiff's] symptoms," Plaintiff's physician was far less definitive in his notes, stating only that marijuana "may be making depression worse." Tr. 487. Second, the record is ambiguous as to what effect ongoing marijuana use had on Plaintiff's depression. For example, despite years of documented marijuana use, Plaintiff has never been diagnosed with marijuana substance abuse disorder. Tr. 467. Nor are there records of any other treating provider discouraging Plaintiff from marijuana use. Moreover, treatment records from 2015 show a period of reported abstention from marijuana use, with no accompanying relief from depression and anxiety. Tr. 344, 351, 353, 354. Under these circumstances, a comment that marijuana "may" be exacerbating depression is not clear and convincing evidence. Finally, the ALJ failed to conduct any inquiry as to whether discontinued marijuana use would allow Plaintiff to return to work, as the Act requires. *See Byrnes*, 60 F.3d at 641; 20 C.F.R. §§ 404.1530, 416.930. Without such an inquiry, the Court cannot agree that Plaintiff's failure to discontinue marijuana is a convincing reason to reject her testimony.

In sum, the Court finds the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's symptom testimony.

II.     **Medical Opinion Evidence**

Plaintiff argues the ALJ erred in finding unpersuasive the medical opinion of Pamela

Roman, PhD. For claims filed on or after March 27, 2017, ALJs are no longer required to give

deference to any medical opinion, including treating source opinions. Rules Regarding the

Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20

C.F.R. §§ 404.1520c, 416.920c. Instead, the agency considers several factors. 20 C.F.R. §§

404.1520c(a), 416.920c(a). These are: supportability, consistency, relationship to the claimant,

specialization, and "other factors." 20 C.F.R. §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5). The

"most important" factors in the evaluation process are supportability and consistency. 20 C.F.R.

§§ 404.1520c(b)(2), 416.920c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the

medical opinions" from each doctor or other source. 20 C.F.R. §§ 404.1520c(b), 416.920c(b)(2).

In doing so, the ALJ is required to explain how supportability and consistency were considered

and may explain how the other factors were considered. 20 C.F.R §§ 404.1520c(b)(2),

416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the

same issue are both equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ is required to explain how the other factors were considered. 20

C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "Even under the new regulations, an ALJ cannot

reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th

Cir. 2022).

Dr. Roman provided a consultative psychodiagnostics evaluation of Plaintiff in August

2021. Dr. Roman diagnosed Plaintiff with PTSD; major depressive disorder - recurrent, severe;

and panic disorder. Tr. 839. Dr. Roman noted that although Plaintiff was "able to understand and remember simple instructions during the interview" she "does not present as someone who could consistently understand and remember more complicated instructions in any kind of populated setting." Tr. 840. According to Dr. Roman, Plaintiff's ability to maintain attention and concentration was in the low average range. Tr. 840. Dr. Roman opined that,

> [g]iven [Plaintiff's] presentation today and her history, she would not be expected to maintain attention and concentration reliably on even a part-time basis right now. She will need a long period of emotional stability before she could be considered for even part-time work and this would need to be in a supervised and supported setting. She is at risk of decompensating as she has in the past in a work environment with episodes of crying, panic attacks and being unable to carry out her duties.

Tr. 840. Dr. Roman further noted Plaintiff was "reluctant to be around others" and characterized her as "withdrawn and avoidant." Tr. 840.

The ALJ found Dr. Roman's opinion to be unpersuasive for three reasons. First the ALJ questioned the supportability of Dr. Roman's assessment because "while daily cannabis use was reported … Dr. Roman did not assess a resulting medically determinable impairment." Tr. 28. However, as discussed in section I, Plaintiff has never been diagnosed with a medically determinable impairment resulting from marijuana use by any provider. *See E.g.*, Tr. 372, 513. Therefore, Dr. Roman's failure to diagnose Plaintiff with a cannabis-use impairment is consistent with the record.

Second, the ALJ stated that "if the claimant were as limited as alleged, it is unlikely she would have been able to take care of a newborn baby during the adjudicatory period or perform daily household chores on any consistent basis, thus making these conclusions also inconsistent with the record as a whole." Tr. 28. As discussed in section I, Plaintiff's ability to care for a newborn and do household chores has not been substantiated with any meaningful details and thus cannot be relied on to reject Plaintiff's

symptom testimony. Accordingly, the ALJ erred in finding Dr. Roman's medical opinion unpersuasive.

Finally, the ALJ stated Dr. Roman "must [have relied] almost entirely on [Plaintiff's] subjective reports" when assessing Plaintiff's limitations in concentration, persistence and pace. Tr. 28. Here, again, the record contradicts the ALJ's claims. Dr. Roman's psychodiagnostics evaluation was based on a review of Plaintiff's prior psychiatric diagnostic evaluation; individual counseling notes; a clinical interview; as well as objective tests such as the Information and Orientation and Mental Control subtests from the Wechsler Memory Scale, Revised (WMS-R), and Digital Span Subtest from the Wechsler Adult Intelligence Scale, Fourth Edition (WAIS-IV). Tr. 834. To the extent Dr. Roman did rely on Plaintiff's subjective reports, this alone is not reason enough to discount her opinion. Indeed, the Ninth Circuit has stressed that,

> [t]he report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology ... [p]sychiatric evaluations may appear subjective, especially compared to evaluation in other medical fields. Diagnosis will always depend in part on the patient's self-report, as well as on the clinician's observations of the patient. But such is the nature of psychiatry. Thus, allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness.

*Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) (internal citations omitted).  As stated above, the ALJ erred in discounting Plaintiff's subjective symptom testimony, and thus cannot reject Dr. Roman's medical opinion for that same reason.

## III.   Additional Evidence

After the administrative hearing, Plaintiff submitted additional evidence to the Appeals Council from treating therapist, Sophie Morris, QMHP. Tr. 8. Plaintiff states this evidence is "consistent with the overall record, including Dr. Roman's conclusions." Pl.

Br. at 22. When evidence is submitted to the Appeals Council, and that evidence become

part of the administrative record, a reviewing court must consider that additional

evidence to "determine whether, in light of the record as a whole, the ALJ's decision was

supported by substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d

1157, 1163 (9th Cir. 2012). However, as the Ninth Circuit has repeatedly stated, the court

"cannot 'manufacture arguments for an appellant' and therefore we will not consider any

claims that were not actually argued in appellant's opening brief." *Indep. Towers of*

*Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (citing *Greenwood v. Fed.*

*Aviation Admin.*, 28 F.3d 971, 977 (9th Cir.1994)). Therefore, this Court may review

"only those issues which are argued specifically and distinctly in a party's opening brief."

*Id.*

　　　　Here, Plaintiff summarized Ms. Morris's opinion but provided no analysis to

support the assertion that the ALJ's decision is not supported by substantial evidence.

Specifically, Plaintiff states Ms. Morris's opinion is consistent with Dr. Roman's opinion

but does not explain how the opinions are consistent. Indeed, an independent review of

both providers assessments indicates they are not consistent. For example, Dr. Roman

assessed no restrictions on Plaintiff's ability to understand and remember simple

instructions and carry out simple instruction, while Ms. Morris assessed Plaintiff as

having moderate and marked limitations, respectively. Tr. 842, 12. Dr. Roman assessed

Plaintiff's ability to interact appropriately with the public, with supervisors, and with

coworkers as markedly limited. Tr. 843. In contrast, although Ms. Morris also assessed

Plaintiff's ability to interact appropriately with the public as markedly limited, she found

Plaintiff's ability to interact with supervisors and coworkers to be only moderately

limited. Tr. 12. Dr. Roman assessed Plaintiff's ability to make judgements on complex work-related decisions as moderately limited, whereas Mr. Morris assessed Plaintiff as markedly limited. Tr. 842, 12.

Additionally, both providers offered different supporting explanations for their assessments. Ms. Morris explained her assessed limitations of Plaintiff's ability to understand, remember and carry out instructions as being supported by "[Plaintiff's] struggles w[ith] decision paralysis and often will dissociate or freeze resulting in additional impairment regarding decisions." Tr. 12. In contrast, Dr. Roman's explanation stated that Plaintiff "has severe symptoms of PTSD and Panic Disorder. She has had panic attacks at work and has been sent home to calm down. In the past 3 years, she has suffered more stressors and would be more likely to decompensate in the work setting." Tr. 842. As such, without further analysis from Plaintiff, the Court cannot conclude that Ms. Morris's opinion is consistent with Dr. Roman's or the record as a whole. And, although this Court must consider additional evidence in the record, "[b]are assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'" *Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) (quoting Fed. R.App. P. 28(a)(9)(A). Accordingly, this Court declines to manufacture an argument as to Ms. Morris's testimony on Plaintiff's behalf.

## IV.    Lay Witness Testimony

Plaintiff argues the ALJ erred in considering the competent lay testimony of two witnesses, Lindsay W., a former neighbor, and Duane Dreher, Plaintiff's housemate. Pl. Br. at 22; Tr. 320, 321. "Lay testimony as to a claimant's symptoms is competent evidence that the

Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation omitted); 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. §§ 404.1520c(d), 416.920c(d). Under the new regulations, however, the ALJ must still articulate their assessment of lay witness statements. *Tanya L.L. v. Comm'r Soc. Sec.*, 526 F.Supp.3d 858, 869 (D. Or. 2021).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine*, 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id*. at 1117, 1122.

**A. Lay testimony of Ms. Lindsay W.**

Ms. W. described Plaintiff as "struggling on a daily basis." Tr. 320. She characterized Plaintiff as "deteriorate[ing] mentally and physically" stating she "became withdrawn and stopped participating in life" after a car accident. Tr. 320. Ms. W. testified that she "saw an improvement in [Plaintiff's] mental health for a short while . . . . [t]hen [Plaintiff] got into some

car accidents. She was physically unable to work due to injuries and lingering pain and therefore let go from employment." Tr. 320. The ALJ found the statement from Ms. W. to be less than consistent with the record because "[Plaintiff] has long-standing mental health problems since she was young and identified one of her biggest problems with her prior job was having panic attacks in front of customers." Tr. 30.

The ALJ did not err in her evaluation of the lay witness testimony as to Ms. W., as her statement is inconsistent with Plaintiff's mental health records showing long-term mental health issues. *E.g.*, Tr. 340, 344, 352, 354, 364. Additionally, Plaintiff's own statements reflect that she was unable to work due to panic attacks and crying in front of customers. Tr. 835. Therefore, the ALJ did not err in determining the neighbor's statement was less consistent with the record.

### B. Lay Testimony of Mr. Duane Dreher

Mr. Dreher testified that Plaintiff has "panic attacks, hyperventilates, overthinks and tries to hide." Tr. 321. She "gets really depressed and will start crying for no reason." Tr. 321. Mr. Dreher described Plaintiff as "avoiding aisles with people" when shopping and being unable to complete shopping trips due to anxiety. Tr. 321 He stated that she "has to be reminded to take her medication or else she would forget she had to take it." Tr. 321. She has "talked about suicide before" and "feels like a burden." Tr. 321. The ALJ concluded statements from Mr. Dreher were "generally consistent with record as a whole . . . although reports that the [Plaintiff] cannot remember to take her medication are not entirely consistent with the record as a whole, as she generally appears to be treatment compliant." Tr. 28.

The ALJ erred as to Mr. Dreher's testimony. Mr. Dreher's testimony was found only partially consistent because Plaintiff's medical records show she is "generally compliant with her medications." Tr. 28. While Plaintiff's compliance with her medication regimen is reflected in

the record, *e.g.*, 504, 509, 517, 539, this is not a sufficient reason to reject the housemate's testimony regarding Plaintiff's social limitations, anxiety, depression. The Commissioner argues that "because the lay witness testimony was similar to Plaintiff's subjective allegations, the ALJ was entitled to discount the lay witness statements for the same reasons she discounted Plaintiff's testimony." Def. Br. at 23. However, as discussed in section I of this opinion, the ALJ erred in rejecting Plaintiff's subjective testimony and as such, errs in rejecting similar lay testimony.

## V.    Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). To determine which type of remand is appropriate, the Ninth Circuit uses a three-part test. *Garrison*, 759 F.3d at 1020; *see also Treichler v. Comm'r*, 775 F.3d 1090, 1100 (2014) ("credit-as-true" rule has three steps). First, the ALJ must fail to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. *Id*. Second, the record must be fully developed, and further administrative proceedings would serve no useful purpose. *Id*. Third, if the case is remanded and the improperly discredited evidence is credited as true, the ALJ would be required to find the claimant disabled. *Id*. To remand for an award of benefits, each part must be satisfied. *Id*.; *see also Treichler*, 775 F.3d at 1101 (When all three elements are met, "a case raises the 'rare circumstances' that allow us to exercise our discretion to depart from the ordinary remand rule."). The "ordinary remand rule" is the proper course except in rare circumstances. *Treichler*, 775 F.3d at 1101.

The Court finds that a remand for further proceedings is appropriate in this case because the ALJ failed to explain with sufficient specificity the basis for rejecting the Plaintiff's testimony. *See, e.g.*, *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991); *see also Connett v.*

*Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true). On remand, the ALJ should reassess Plaintiff's subjective allegations, including what effect continued marijuana use has on Plaintiff's ability to return to work. Then, if necessary, the ALJ should proceed through steps four and five to determine what work, if any, Plaintiff is capable of performing.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED:   March 6, 2024         .


_____
MARCO A. HERNÁNDEZ
United States District Judge